448

Argued November 23, 1896; decided February 15, 1897.

# ROYAL v. ROYAL.
### (47 Pac. 828.)

EXPENDITURES BY TRUSTEE.—One holding the legal title to land, partly, however, in trust, cannot charge the cestui que trust with money expended without his consent or knowledge for subsidies to such enterprises as water works or street-car lines.

COMPENSATION OF TRUSTEE.—A trustee of lands who receives the income therefrom without rendering any account thereof, or being called upon for an account, is not entitled to any compensation for services as trustee.

COSTS—TRUSTEES.—Where litigation has been caused by the wrongful conduct of a trustee or of one of the parties to a contract, the costs and disbursements ought to be charged against the party at fault.

SUPPLEMENTAL PLEADINGS—CHANGE OF CONDITIONS.—Where, pending an appeal, the conditions and surroundings of one of the parties change so that a decree predicated on the facts existing at the time of trial will be inequitable, the cause should be remanded, to the end that supplemental pleadings may be filed and justice administered.

From Multnomah:  LOYAL B. STEARNS, Judge.

Cross bill by Osmon Royal against Ladru Royal, to enjoin an action of ejectment, and to enforce a trust in the land. From a decree enforcing the trust, but charging plaintiff with certain sums, he appeals.

MODIFIED.

For appellant there was a brief over the signature of *Dell Stuart* and *Dolph, Mallory & Simon,* with an oral argument by *Messrs. Rufus Mallory* and *Dell Stuart.*

For respondent there was a brief over the signature of *Henry H. Northup* and *Paxton, Beach & Simon,* with an oral argument by *Mr. Northup.*

Opinion by MR. JUSTICE BEAN.

This is a proceeding by cross bill to enjoin an action at law, and for a decree that plaintiff is the owner of an undivided half interest in the real property which the defendant seeks to recover in the action.   The facts are that on September 15, 1875, C. W. Royal, the father of the parties to this suit, conveyed the land in question to the defendant, Ladru Royal, in consideration of an agreement by him and his brother to pay and discharge his outstanding obligations, the undivided one-half thereof to be held in trust for plaintiff.   To accomplish this purpose, the said parties put their earnings into a common fund, which was used in the support of themselves and parents, and in payment of such outstanding debts, until August, 1878, when the plaintiff, Osmon Royal, went east to attend school and complete his professional education, where he remained until some time in 1885, when he returned to Oregon, and soon thereafter erected a sanitarium upon the land in question, and occupied the same until about the 25th of October, 1892, at which time the defendant, denying his title or interest therein, brought an action to recover possession of the property, and in such action this cross bill was filed.   The defendant answered the cross bill, denying the plaintiff's alleged interest in the property, and set up title in himself, and, in addition thereto, claimed and alleged that he had paid more than his proportion of the debts of his father outstanding at the time the deed was made in 1875; had loaned the plaintiff money to assist him in procuring an education; had put valuable and permanent improvements upon the property; and incurred divers and sundry other expenses in the management thereof, which he claimed should be charged against the plaintiff's interest therein, if it should be found that the allegations of his complaint in that regard are true.   Upon a trial in open court of the issues joined, it was decreed that plaintiff is the owner of an undivided one-half of the real property

in controversy, and that defendant held the title thereof in trust for him. The cause was then sent to a referee with instructions to ascertain and report to the court, from the evidence already taken: first, the amount of the indebtedness of C. W. Royal at the time of the execution of the deed to Ladru Royal in 1875; second, how, when, and by whom these debts were paid, and from what source the money was derived; third, what expenditures have been made by either party on account of the land justly chargeable thereto, or for which the party making such expenditures is entitled to credit; fourth, whether the property has been encumbered, by mortgage or otherwise, prior to the commencement of this suit, and, if encumbered and money borrowed, when and by whom, in what amount or amounts, and to what use applied, and by whom; fifth, what sum or sums of money was or were advanced by either party to the other from the 8th day of August, 1878, the day when plaintiff left Oregon to attend school, until his return in 1885. After the case had been argued, and submitted to the referee, the court, on motion of defendant, directed him to include in his report an answer to the following additional questions: (1) What sum or sums of money were advanced to either by the other after plaintiff's return from school in 1885, up to the commencement of this suit; (2) what, if any, sums of money Ladru Royal paid out for the care and maintenance of his father and mother since the conveyance of the land to him; and (3) a general statement of all the accounts between the parties.

In due time the referee reported that the indebtedness of C. W. Royal at the time of the execution of the deed by him to the defendant amounted to $1,682.99; second, that these debts had been paid, but it was impossible to determine from the evidence when they were settled, except that prior to August 8, 1878, there had been paid on

account thereof $1,080.99, principal and interest, and on that date there remained unpaid $838.75, making the total amount, paid and unpaid, $1,917.74. The referee also finds that the business was generally done by the defendant, directly or through the agency of others, and that, to enable him to make payments on said indebtedness, the plaintiff, as well as Mr. and Mrs. C. W. Royal, turned into his possession and control their resources and earnings, and that these, together with his own earnings, constituted the source from which the debts were paid. He then undertakes to estimate ᵗhe amount of money so received by the defendant from the plaintiff and Mr. and Mrs. C. W. Royal, and applied by him in payment and discharge of these debts, and arrives at the conclusion that on August 8, 1878, there was due from the plaintiff to the defendant, on account of advances by the latter in excess of his share, the sum of $155.90. In answer to the third question, the referee finds that the cost of improvements, which were made by the defendant exclusively, less a small amount paid by Mrs. C. W. Royal, amounted in the aggregate to $4,877, one-half of which should be charged to the plaintiff; and, in addition thereto, he finds the plaintiff should be charged with one-half of certain subscriptions in aid of street railway lines, and money invested in water works by the defendant, amounting, principal and interest, to $1,567.19, and with one-half of $1,100 taxes paid by defendant on the property, and with $900 for defendant's services as trustee. He also finds that the defendant loaned to the plaintiff while he was east attending school the sum of $790, and that, between the time of plaintiff's return to Oregon and the commencement of this suit, he became and is indebted to the defendant on general account in the sum of $2,800.95. The referee then summarizes the account, and finds that the plaintiff is indebted to the defendant, including interest, in the sum of

$11,772.89. This was reduced by the court to $8,688.78, and a decree entered in favor of the defendant for that amount, from which the plaintiff appeals.

No appeal having been taken from that part of the decree establishing plaintiff's interest in the land in controversy, the only question before us is the state of the accounts between the parties in reference to such matters as are properly chargeable to the land. The court below seems to have proceeded upon the theory that the suit is for a general accounting, and by its decree undertook to adjust and settle the entire account between the parties. But the sole object and purpose of the suit being, as we regard it, to enforce a trust and establish the plaintiff's interest in a particular tract of land, no questions could be properly tried therein except such as arose out of or were directly connected with the subject-matter of the suit. And, since all matters embraced in the second order of reference relate entirely to the general course of dealing between the parties after the return of plaintiff from the east, and have no connection whatever with the subject-matter of this controversy, but embrace matters wholly foreign thereto, we shall dismiss without further consideration the referee's findings in reference thereto, and shall eliminate all questions of general accounting between the parties concerning matters arising after the return of the plaintiff from the east in 1885, leaving them to be considered in some proper proceeding to be instituted hereafter, if deemed advisable by either of the parties.

The only questions which it seems to us can be properly considered here are: (1) The amount of indebtedness of C. W. Royal, the father of the parties to this suit, paid by the defendant, and properly chargeable to the plaintiff; (2) the value of the improvements upon the property made by him; (3) the amount of money loaned by him to the plaintiff during the time the latter was east attending

school, for the payment of which the land was held as security; and (4) the amount defendant has realized from the property, either as rents and profits, or otherwise. These are entirely questions of fact, and we shall simply state briefly the conclusions arrived at after an exhaustive examination of the record, conscious, however, of the fact that, owing to the uncertainty of the testimony, they are at best only approximately right. In reference to the first question, the evidence consists of the indistinct recollection of the parties and of their father and mother, and is very conflicting and unreliable. No list of the liabilities seems to have been made at the time of the conveyance, and no subsequent account kept of the payments thereon, or of who supplied the money to make them. The only definite landmark in the whole transaction is the fact that on August 8, 1878, the day before the plaintiff started east, he and defendant had a partial accounting or adjustment of their financial affairs, from a written memorandum of which, made at the time, it appears that the outstanding obligations then amounted to $1,258, and consisted of divers and sundry small unsecured debts, and a mortgage on the property for $500. As this is the most definite and reliable fact in the whole transaction, we shall adopt it as a starting point for an accounting between the parties; and, as it appears from the testimony that all payments thereafter made in liquidation of the debts then outstanding were made by the defendant, we shall allow him credit for the amount thereof. It appears, however, that the claims of Gilham for $90, Cummings for $100, Stinson for $20, and Fletcher for $108, were never paid by the defendant at any time, and that on the debt of $100 due J. H. B. Royal he paid but $85, so that from this sum total there should be deducted $333, leaving the sum of $925 as the amount of the then outstanding debts which the defendant subsequently paid, and for which he

is entitled to credit.   In the matter of improvements on the property, the testimony shows them to consist of a house of the probable value of $1,800, fencing $200, well $75, cistern $25, clearing eighteen acres, at $50 an acre, $900, making a total of $3,050.   From this there should be deducted the sum of $700 expended by plaintiff in building an addition to the dwelling house after his return from the east, leaving a balance of $2,350 to defendant's credit on this account.

The matter of subsidies and subscriptions to street railways and water companies, for which the defendant was allowed credit by the referee and court below, must be entirely eliminated from his account, the evidence very clearly showing they were made on his own responsibility, for his own benefit, and as mere matter of speculation, and in no sense proper charges against plaintiff.

His claim of credit on account of taxes paid is based upon the fact that he paid taxes upon certain mortgages given by himself upon the property, and the evidence in relation to the amount thereof being indefinite and uncertain, in our opinion he should be allowed no more than $241, the amount admitted by the reply; nor should he be allowed any compensation for his services as trustee.   He, together with his father and mother, had possession and control of the property and of the incomes derived therefrom during the entire time, for which he has rendered no account, and is not charged in this proceeding with the use and occupation or rents and profits.

The evidence indicates, and it seems to be conceded by the plaintiff, that prior to his trip east to attend school it was agreed that all moneys loaned to him by defendant while thus engaged should be regarded as a charge or lien upon his interest in the land in question, and for this reason the defendant is entitled to a credit therefor.   The amount of these advances was $790.   These, as we under-

stand the record, are all the items for which defendant is entitled to credit in this proceeding.   But, as an offset thereto, he should be charged with a mortgage to secure the sum of $2,200, put upon the property by himself during the absence of plaintiff in the east, and from the proceeds of which it is probable a portion if not all the outstanding debts of C. W. Royal were paid and discharged. So that, at the time of plaintiff's return, he should be charged with his proportion of the amount of C. W. Royal's debts paid by defendant, $925; the cost of improvements, $2,350; and taxes paid, $241.50; and was entitled to a credit of $2,200, the amount of the mortgage upon the land, leaving as a balance to the credit of defendant on the 1st day of January, 1886, the sum of $1,316.50, one-half of which, together with the sum of $790 loaned to the plaintiff while east, aggregating $1,448.35, with legal interest from that date, is the amount due the defendant from the plaintiff on account of transactions arising out of the subject-matter of this suit.   The decree of the court below is modified accordingly, and, inasmuch as the litigation was caused by defendant's wrongful denial of plaintiff's title, and the repudiation of his trust, the plaintiff should recover his costs and disbursements in this court, and the court below, and it is so ordered.

MODIFIED.

Decided May 1, 1897.

ON APPLICATION TO FILE SUPPLEMENTAL BILL.

Opinion by MR. JUSTICE BEAN.

This is a motion for an order remanding this cause, with permission to the plaintiff to apply to the court below for leave to file a supplemental bill, setting up the loss of the trust property by the defendant since the rendi-

tion of the decree from which this appeal was taken. From the showing made, it appears that during the pendency of this case in this court the property in controversy was sold on the foreclosure of a mortgage given by the defendant on February 2, 1892, to secure $15,000, borrowed for his own benefit, and that the time for redemption has long since expired, so that he is now unable to comply with the decree. It is in view of these facts that the motion is made, and, as they are substantially admitted, we think it should be allowed. The decree heretofore ordered was predicated on the theory that the defendant held in trust for the plaintiff the title to certain property, upon which he had a lien for improvements made, money advanced, and taxes paid, and which he was able to convey to the plaintiff; but since he has in fact appropriated the trust property to his own use, or, at least, has suffered the title to pass from him, so that it is now impossible for him to comply with the decree on his part, it would certainly be rank injustice to permit him to enforce a decree against the plaintiff for a large sum of money arising out of transactions connected with the trusteeship, without being required to account for the damages sustained by the loss of the trust property, the value of which is variously estimated from $8,000 to $25,000. But, in view of this disposition of the case, it is proper that the petition of the defendant for a modification of the account between the parties, as stated in the former opinion, be allowed. In the statement of account as made, the defendant was charged with the proceeds of a mortgage to secure the sum of $2,200 put upon the property by himself during the absence of the plaintiff in the east. This was done upon the theory that the trust property would be conveyed to the plaintiff charged with its proportionate share of the amount of this mortgage; but, inasmuch as it now appears that the defendant will be unable to comply with

the decree, and must account for the damages sustained by reason of the loss of the trust property, it will probably be more convenient to adjust the matter the same as if the defendant had obtained the money represented by the mortgage from some other source. The amount, therefore, with which the paintiff should be charged in the accounting between himself and the defendant is $2,548.25, and interest from January 1, 1886; and he is entitled to a credit for the entire loss of the trust property, to be hereafter ascertained. The cause will, therefore, be remanded to the court below, with permission to the plaintiff to apply to that court for leave to file a supplemental bill as suggested.

MOTION GRANTED.