IN RE TRUSTEESHIP UNDER LAST WILL OF JULIA A. ROSENFELDT.
FOSHAY TRUST & SAVINGS BANK, APPELLANT.[1]

March 4, 1932.

No. 28,723.

[1]Reported in 241 N. W. 573.

426

*Junell, Oakley, Driscoll & Fletcher,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *Edwin B. Baer,* for respondent beneficiaries.

*Ueland & Ueland,* amici curiae, filed a brief in support of the contention of appellant.

HOLT, J.

The appeal is from an order surcharging the account appellant presented to the court for allowance upon resigning as trustee under the last will and testament of Julia A. Rosenfeldt, deceased. The beneficiaries of the trust filed objections to certain items in the account and asked that the same be surcharged. The court made findings and surcharged the trustee with certain items which are challenged by this appeal.

The findings of fact are not questioned. They are very lengthy, and only so much thereof as deemed necessary for an understand-

ing of the legal questions involved in the appeal will be stated. From 1917 until 1929 W. B. Foshay Company, a Minnesota corporation, was engaged in selling securities, both its own and those of others. In April, 1928, W. B. Foshay Company incorporated under the laws of Delaware to transact business in this state. It was organized by the officers of the Minnesota company for the purpose of acquiring the business of the Minnesota company. Pursuant to that plan the stockholders of the latter were requested to exchange their stock for stock in the Delaware company; and by the end of the year most of the stock of the Minnesota company was in the hands of the Delaware company, which on December 31, 1928, exchanged the stock for the assets of the Minnesota company. On November 1, 1929, a receiver was appointed for the Delaware company.

R. J. Rosenfeldt, a securities salesman, entered the employ of W. B. Foshay Company in 1920 and remained with the company until his death in 1926, earning during that time about $250,000. He was during most of the time a director and vice president of the company. He bequeathed his property to his wife, Julia A. Rosenfeldt. She was appointed executrix and acted until her death May 25, 1927. Thereafter appellant was appointed administrator de bonis non of his estate and continued therein until May 8, 1928, when its account as such was allowed by the probate court and appellant discharged. Appellant also filed the final account of Julia A. Rosenfeldt as executrix of her husband's estate, covering the time to her death, which was allowed, and she was discharged by an order filed February 27, 1928.

Julia A. Rosenfeldt died testate. Appellant was named executor in her will and was appointed such June 29, 1927. The will left the residue of her estate, after the payment of certain bequests and the expenses of administration, to appellant in trust, the income thereof to go to her two daughters for life and after the death of both the residue of the estate to their children. Appellant was discharged as executor by order of the probate court on July 21, 1928. On July 10, 1928, by order of the district court appellant was appointed trustee under the last will and testament of Julia A. Rosen-

feldt to receive the residue of her estate, and on July 21, 1928, appellant as such trustee received from itself as executor the assets remaining of the estate. Among such assets were 1,893 shares of stock in the W. B. Foshay Company, the Delaware company, the same having been exchanged for that of the Minnesota company. The main controversy in the court below centered upon appellant's dealings with this stock. As to all except 151 shares the decision was in favor of appellant. Three of the 151 shares were purchased after appellant was appointed trustee.

The items in the final account of appellant as trustee which are involved in this appeal are: $13,320, money paid for 148 shares of stock of the Delaware Foshay company; $750 paid its attorneys as retainer in this litigation; and $277 paid itself for services as trustee, with which items the account was surcharged. The surcharging of the two last mentioned items presents the same question as the refusal to allow appellant any amount for services as trustee and attorneys' fees herein. The surcharging the account $285 paid for three shares of the W. B. Foshay Company stock purchased after appellant was appointed trustee is conceded proper.

As to the $13,320 item, the findings are in substance that in settling the R. J. Rosenfeldt estate and paying claims allowed therein some claimants were paid in W. B. Foshay Company stock, some accepted part stock and balance cash, and some insisted on cash. In order to settle both estates expeditiously, appellant as executor of Julia A. Rosenfeldt estate purchased of itself as administrator of R. J. Rosenfeldt estate the said 148 shares of the Foshay company stock, paying therefor out of the moneys it held as executor of Julia A. Rosenfeldt's estate $90 a share, or $13,320. The court finds that the active officials of appellant did this in good faith and upon the advice of its attorneys, men of high professional standing, and upon the written approval of the two daughters of Julia A. Rosenfeldt, who, with their children, minors, were the beneficiaries in her will, and upon being authorized by the order of the probate court.

Were this all, appellant could not have been surcharged this item. But the court also finds that the stock in the W. B. Foshay Com-

pany had no value at the time of R. J. Rosenfeldt's death nor since. The liabilities of the Delaware company, which absorbed the Minnesota company, were estimated at ten millions of dollars and the assets at less than a half million when receivers took charge. In 1926 the Minnesota company acquired about 60 per cent of the stock of appellant, and thereafter W. B. Foshay, H. H. Henley, and H. E. McGinty were elected directors of appellant. These three men from that time on constituted the majority of the directors and the president, vice president, and secretary-treasurer, respectively, of the Minnesota company and, after its organization, of the Delaware company until the receivers were appointed. The findings are that these men and officers knew that the Minnesota and Delaware companies were insolvent; that the dividends declared were being paid out of capital and not from earnings or surplus; that the stock had no value; and that their knowledge was imputed to appellant. The court found that appellant, charged with this knowledge, perpetrated a fraud upon the beneficiaries under the will of Julia A. Rosenfeldt, when, without disclosing their worthlessness, it obtained their written consent to purchasing these 148 shares of stock, and also practiced a fraud upon the probate court in procuring from it authority to make the purchase.

We have no bill of exceptions or settled case, and whether this item of $13,320 should be surcharged must rest on the findings alone. The serious question presented is: Is the knowledge which the chief executive officers of the two W. B. Foshay companies had, or should have had, constructive or imputed knowledge to appellant by reason of the fact that 60 per cent of its stock was held by the Minnesota company and these same officers were also directors of appellant?

Where one corporation is in control of another corporation by virtue of ownership of the majority of its stock and identity of officers in charge, it would seem almost necessary, in order to prevent fraud and double dealing, to charge the corporation so under control with the knowledge of the condition of the two corporations, obtained by its officers while acting in the capacity of managing

officers of the controlling corporation. It is apparent that control of appellant was obtained by the W. B. Foshay Company to serve its purposes. The trial court in the memorandum made a part of the findings said:

"In view of the control of the stock and interlocking directorate between the Trust Company and W. B. Foshay Company it must be presumed that the Trust Company knew that W. B. Foshay Company stock had no value. In making these purchases with cash money belonging to the Julia A. Rosenfeldt estate, it knowingly purchased stock from R. J. Rosenfeldt's estate that was worthless. The two daughters had no knowledge of the true value of the Foshay stock. * * * The knowledge of the Foshay Company as to the non-value of the stock was, however, imputed to the Trust Company, and under these circumstances the beneficiaries should not be estopped from basing a claim on account of the negligence of the trustee. An executor that knowingly makes a worthless investment and fails to inform the heirs of the true facts cannot contend that an approval constitutes an estoppel when the heirs had no knowledge as to the value of the investment and believed it constituted a judicious and prudent expenditure of the funds of the estate. If the Trust Company had informed the Probate Court and the beneficiaries of the true character of the W. B. Foshay Company stock, no purchase would ever have been approved by the court."

The court finds that some of the W. B. Foshay Company's stock was sold after Mr. Rosenfeldt's death, but only by "high pressure" methods. Appellant, acting as representative in both estates, where the principal assets consisted of this stock, which its duty was to convert into cash, could not but have had knowledge that it was not marketable. It stood in a fiduciary relation to the beneficiaries under Mrs. Rosenfeldt's will and owed them a full disclosure as to its knowledge of the value of the stock which it bought from itself. Under those circumstances its duty should have prompted it to investigate its value. These extracts from the findings, in our opinion, warrant the conclusion of law as to this item:

"Since petitioner was charged with knowledge of the worthlessness of the Minnesota stock in 1927 and 1928, it should not have used $13,320 of the money held by it as executor of the estate of Julia A. Rosenfeldt to purchase stock of the Minnesota Company from itself as administrator de bonis non of the estate of R. J. Rosenfeldt. * * * Since the actual and constructive knowledge of Messrs. Foshay, Henley, and McGinty as to the value of the stock of the Minnesota Company was not disclosed either to the said daughters or to the said court, petitioner's account * * * should have been surcharged with $13,320, the amount expended by it in purchasing such stock. Since that was not done, petitioner as trustee should have proceeded against itself as executor to recover said sums of money and having failed so to do its account should now be surcharged with $13,320."

These findings indicate a litigation of issues of fraud and misconduct sufficient to set aside the orders of the probate court in a direct attack. The good faith of the "active officials" of appellant, who presumably without adequate knowledge or investigation made the false representations to the beneficiaries in obtaining their consent to the purchase of these 148 shares of worthless stock and the court's order authorizing it, must refer to office subordinates carrying on the ordinary routine work.

The claim that no loss resulted to the Julia A. Rosenfeldt estate from the purchase of these 148 shares of worthless stock cannot be sustained on these findings. Cash to the amount of $13,320 was taken from its assets. The court finds the husband's estate was solvent. That must mean that it was solvent without receiving the price paid for this worthless stock. There is nothing in the findings to show that if this sale had not been made the Julia A. Rosenfeldt estate would have received $13,320 less than it did receive from R. J. Rosenfeldt's estate. Nor is there anything to show that appellant as trustee would have had a doubtful claim to enforce against itself as executor for having been negligent in giving the beneficiaries and the probate court wrong information in respect to the value of the stock when the authority to purchase it was ob-

tained. An ingenious argument is made on the assumption that creditors of R. J. Rosenfeldt could have set aside as fraudulent gifts and transfers from him to his wife, had not this $13,320 been obtained for his estate. But the findings are silent as to the existence of creditors who were in position to assail transfers from husband to wife. Nor are facts found which show any such transfer or gifts at a time when the husband was rendered insolvent thereby. So the many authorities cited by appellant as to the presumption obtaining in actions to set aside transfers from one spouse to the other as fraudulent as to existing creditors are without application.

Amici curiae have filed a brief contending that the orders of the probate court authorizing the purchase of these 148 shares and discharging appellant as executor of the will of Julia A. Rosenfeldt are conclusive and cannot be attacked collaterally as here done. Such may be conceded to be the law. G. S. 1923 (2 Mason, 1927) §§ 8886, 8887, indicates that a discharge is not to be obtained until the trust has been fully executed and the money or property has been delivered to those entitled thereto. Hence a discharge presupposes a full and final accounting. Even an annual account allowed by the probate court after a contest is conclusive. Kittson v. St. Paul Tr. Co. 78 Minn. 325, 81 N. W. 7. See also Pierce v. Maetzold, 126 Minn. 445, 148 N. W. 302; Winters v. Ellefson, 128 Minn. 3, 150 N. W. 171; First T. & S. Bank v. U. S. F. & G. Co. 156 Minn. 231, 194 N. W. 376; Id. 161 Minn. 88, 200 N. W. 848; Trapp v. Trapp, 182 Minn. 537, 235 N. W. 29. This point is not made by appellant and is not available to it upon this record. There is no bill of exceptions nor settled case, and in support of the findings it must be presumed that all facts found and issues determined were litigated by consent. Stevens v. Stevens, 82 Minn. 1, 84 N. W. 457; Peach v. Reed, 87 Minn. 375, 92 N. W. 229; and State ex rel. Yapp v. Chase, 165 Minn. 268, 206 N. W. 396, where previous cases are more fully cited. The findings are that fraud or mistake of fact induced the consent of the beneficiaries and the orders referred to of the probate court. Such being the fact, the orders would be vulnerable to a direct attack. Bruski v. Bruski, 148 Minn. 458, 182 N. W. 620;

Schmitz v. Martin, 149 Minn. 386, 183 N. W. 978. And it must be assumed that the parties consented to litigate this as if in a direct suit.

The objections to the trustee's account sought also to surcharge it $179,370 for appellant's failure to sell the Foshay company stock while executor and trustee under the will of Julia A. Rosenfeldt. As to that item the trustee prevailed. Undoubtedly the litigation in regard to this account was important and expensive to the trustee. The court refused to allow the trustee its expenses and attorneys' fees. The objections to the account were not futile. Because the objectors got much less than claimed, there was enough substance to their opposition so that the court could in its discretion refuse to charge appellant's expenses of the litigation to the estate. The court likewise refused appellant fees for services as trustee, deeming it had received adequate compensation as executor of the two estates and holding the work as trustee largely routine until the final account was filed, upon resigning as trustee before the trust was ended. The court said:

"Practically the entire claim for fees and expenses arises out of litigation which was occasioned in part, at least, by the failure of the trustee to exercise reasonable care and prudence in the performance of its fiduciary duties. The beneficiaries were obliged to expend large sums of money for attorneys' fees and otherwise in obtaining what was justly due them from the trustee. While the larger part of the claim of the beneficiaries proved to be unenforceable, nevertheless, under all the circumstances as disclosed by the evidence, a court of equity is amply justified in denying the trustee any fees or expenses as such trustee."

The court's findings with respect to appellant's right to compensation for services as trustee are:

"The court finds, however, that the evidence fails to sustain a finding that the trustee, with the knowledge imputed to it, acted in good faith in the administration of this trust and finds that it failed to perform the duties of trustee in a faithful manner; that no fees or expenses should be allowed to the trustee in view thereof."

Therefore the fees of $2,500 in the account were disallowed and $277 paid to itself, and the $750 paid its attorneys as retainer in this action were surcharged in the account. Appellant invokes G. S. 1923 (2 Mason, 1927) §§ 7663, 7737, which both provide that a trust company, either acting as executor or trustee, "for the faithful performance of its duties and discharge of its trust it shall be entitled to reasonable compensation * * * and all necessary expenses." Truesdale v. Philadelphia T. S. D. & I. Co. 63 Minn. 49, 65 N. W. 133. But the difficulty here is that appellant did not fulfil the condition which entitles it to fees or expenses. The court found that it did not faithfully perform or discharge its duties and trust. The cases cited by appellant do not give fees and expenses to a trustee who has not faithfully discharged the trust. Loring v. Wise, 226 Mass. 231, 115 N. E. 302, is a sample. In In re Kline's Estate, 280 Pa. 41, 124 A. 280, 32 A. L. R. 926, the court refused to make allowance to a trustee who had been supinely negligent in performing its duties.

The objectors were entitled to tax costs and disbursements in the court below as the prevailing party, even if they did not obtain all they sought.

The order is affirmed.