471 So.2d 1238 (1985)
J. Donald REYNOLDS as Guardian Ad Litem (Charlotte Kyle Martin & Kathleen Gerson, et al.)
v.
FIRST ALABAMA BANK OF MONTGOMERY, N.A.
Charlotte Kyle MARTIN, Kathleen Gerson, et al.
v.
FIRST ALABAMA BANK OF MONTGOMERY, N.A.
FIRST ALABAMA BANK OF MONTGOMERY, N.A.
v.
Charlotte Kyle MARTIN & Kathleen Gerson, et al.
83-70 to 83-72.
Supreme Court of Alabama.
April 19, 1985.
*1239 Jack Crenshaw and Richard H. Gill of Copeland, Franco, Screws and Gill and J. Donald Reynolds, Montgomery, for appellants/cross-appellees.
M.R. Nachman, Jr. of Steiner, Crum & Baker, Montgomery, for appellee/cross-appellant.
ADAMS, Justice.
This is the third time beneficiaries of trusts held by First Alabama Bank of Montgomery, N.A., have come to us asking to be made whole, their claims being occasioned *1240 by the imprudent investments made by their paid trustee.[1]
On remand, the beneficiaries were able to obtain a judgment in the amount of $5,753,747.00 and the beneficiaries' attorneys were awarded a fee of one-third of that amount, or $1,795,200.00. The guardian ad litem was awarded a fee of $7,200.00. The beneficiaries' attorneys filed a motion to require the bank to pay these fees because trial judge Hooper's decree of August 19, 1981, ordered that "... the class plaintiffs be put in the same position they would have occupied except for the breaches of fiduciary duty ... [and] that the defendant perform such acts as are necessary to put the class plaintiffs in that position." Furthermore, they point to language in our opinion in Martin II which they claim further strengthens their argument that the bank should pay their counsel fees. We said in Martin II:
Where a trustee makes an investment that is improper, it is equitable for the court to put the parties in a position they would have occupied except for the breach of trust.
First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415, 429 (Ala. 1983).
Before this case could be heard on remand, the original trial judge, Judge Hooper, had retired from the bench, and Judge Charles Price had assumed responsibility for this litigation.
Judge Price took testimony concerning the reasonableness of an attorney's fee in this case, and considered the motion to assess fees against the bank. Although it does not appear that the parties had the benefit of our recent decision concerning attorney's fees, Peebles v. Miley, 439 So.2d 137 (Ala.1983), our review of the record indicates that testimony was directed to most, if not all, of the criteria mentioned in that opinion. Members of the class were properly notified of the proceedings, and those who testified stated that they thought that one-third of the amount of the recovery was reasonable, but were of the opinion that, inasmuch as their loss was occasioned by no fault of their own, the bank whose actions caused the loss should also pay the attorneys' fee if they were, indeed, to be made whole.
Judge Price rejected this argument and held that counsel were entitled to the fee he had set, but that it must come solely from the fund which the attorneys had created. In so doing, Judge Price was following the American rule, that a party must pay his own counsel fees and there can be no shifting of litigation costs.
At this juncture, let us assess the posture of the case as it is presented to us on appeal. As a result of procedures in the trial court, the beneficiaries have received the amount of their judgment, less $1,795,200.00, which has been paid directly to their counsel of record. Defendant bank has cross-appealed, claiming that it has overpaid in this case because the statute of limitations bars recovery to those beneficiaries whose trusts terminated more than one year before the filing of this law suit. The beneficiaries claim that this defense was raised in Martin II, and thus, that the issue is not before us because of the doctrine of res judicata.
*1241 The beneficiaries' attorneys are not seeking additional compensation for this appeal. They agree that they have been adequately compensated for their hours (approximately 2,600), and by all the other yardsticks used in determining attorney's fees, but they appear before us because they believe they have a professional responsibility to see that their clients are made whole as per the law of the case as expressed by Judge Hooper and by this Court. The sole purpose of the beneficiaries' appeal is to shift the responsibility of the fee from their shoulders to the bank. Of course, the bank claims that the fees for the beneficiaries, as well as for the guardian ad litem, are clearly excessive, are not in conformity with the criteria we set out in Peebles, supra, and, if allowed to stand, would bring the bench and the bar into great disrepute.
The issues spring from the cases so postured:
1. Did the trial court correctly refuse to assess the beneficiaries' attorneys' fees against the bank?
2. Was the amount of the award of the attorneys' fees to the beneficiaries' lawyers, as well as the amount of the award of attorneys' fees to the guardian ad litem, grossly and clearly excessive?
a. Does the bank have standing to claim excessiveness?
3. Did the trial court erroneously reject the bank's plan to exclude as participants from any distribution of principal and income, beneficiaries of trusts that had terminated more than one year prior to the commencement of this action?

American Rule
In order to properly analyze the interplay of the American rule in this case, we must first keep in mind the nature of the litigation vehicle. First and foremost, this is a class action filed by the beneficiaries of approximately 1,250 individual trusts against their paid trustee seeking a declaration as to the duty of the bank and its liability to account, a declaration that certain investments were imprudent, and affirmative relief requiring the bank to restore to the common trust fund the losses sustained because of the bank's improper investments. In other words, this is essentially an equitable proceeding.
We said in Martin II that "in Alabama, a court of equity is authorized to mold its decree so as to adjust the equities of the parties and meet the necessities of each situation, Coupounas v. Morad, 380 So.2d 800 (Ala.1980); BBC Investment Co. v. Ginsberg, 280 Ala. 148, 190 So.2d 702 (1966)." 425 So.2d at 429. Can this traditional function of equity coexist in a case where the plaintiff seeks to shift the burden of attorney's fees to the defendant trustee in face of a rule which provides that each party should pay his own attorney's fee? Just recently, our Court said in Eagerton v. Williams, 433 So.2d 436 (Ala. 1983):
In Alabama, attorney's fees are recoverable only where authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be made. Shelby County Commission v. Smith, 372 So.2d 1092 (Ala.1979); State ex rel. Payne v. Empire Life Ins. Co., 351 So.2d 538 (Ala. 1977). We affirm the trial court's finding that the decree creates a common fund from which counsel fees may be made.
433 So.2d at 450.
We think these two doctrines can co-exist, but a better understanding of the rule is necessary to appreciate the basis of our decision. Strangely, although we borrowed our body of law called the common law from England when this country was established, we did not borrow the English method of handling attorney's fees. As early as 1278, the English courts allowed counsel fees to the successful plaintiffs in litigation. However, it took until 1607 for the English courts to authorize an award of counsel fees to the defendants in all actions where such awards might be made to plaintiffs.[2]
*1242 In fact, our research has found no country in the world that does not allow the equitable allocation of attorney's fees except our own.[3]
It is said that the rule arose out of our colonial experience where lawyers were looked upon with suspicion and were considered characters of disrepute. In those days, judges in most cases were laymen and, therefore, it was thought that counsel was unnecessary. This general feeling was evidenced by the fact that statutes forbade lawyers from receiving fees and denied them the use of the courts if they were paid.[4] As our country grew, more people obtained legal training and became judges and the process of recognizing the values of a lawyer's services began. Eventually, statutes were passed which allowed the losing party his costs. This was later expanded to include specified fees to be paid counsel.
Although the rule has been soundly criticized by the commentators, its vitality on the American scene has not seemed to weaken.[5] Furthermore, there seems to be no organized effort to mount an assault on the doctrine.
Nevertheless, the rule is usually expressed with exceptions encouched therein. One of the main exclusions is the equitable exception. In the United States Supreme Court case of Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the Court explained in no uncertain terms that the rule may be overridden if the equities justify it. Justice Brennan, speaking for the Court, said:
Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require. Indeed, the power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," Sprague v. Ticonic National Bank, 307 U.S. 161, 166 [59 S.Ct. 777, 780, 83 L.Ed. 1184] (1939), and federal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such a recovery." Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-392 [90 S.Ct. 616, 625-626, 24 L.Ed.2d 593] (1970)....
Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 J. Moore, Federal Practice ¶ 54.77[2], p. 1709 (2d ed. 1972) .... In this class of cases, the underlying rationale of "fee shifting" is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of "bad faith" on the part of the unsuccessful litigant.
Another established exception involves cases in which the plaintiff's successful litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to *1243 spread the costs proportionately among them." Mills v. Electric Auto-Lite, supra, at 393-394 [90 S.Ct. at 626].
412 U.S. at 4-5, 93 S.Ct. at 1945. (Footnotes omitted).
In Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Court said:
The fact that this suit has not yet produced, and may never produce, a monetary recovery from which fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing the right to reimbursement involved litigation that had produced or preserved a "common fund" for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses [footnote omitted].
396 U.S. at 392, 90 S.Ct. at 625.
Thus, we see that special equity does not necessarily mean the spreading out of attorney's fees among the members of a class where a fund has been created, as counsel for the bank has seemed to suggest. It can be awarded, as was the case in Mills, where there has been a fraudulent representation.
Although a more recent United States Supreme Court Case, Alyeska Pipeline Service v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), would seem to be a retrenchment from the doctrines expressed in Hall and Mills, nevertheless, these cases were not overruled. Alyeska can be read to stand for the proposition that courts should not award attorney's fees under 30 U.S.C. § 185, or 42 U.S.C. §§ 4321 et seq., unless such statutes contain a provision for attorney's fees. As a result of this case, Congress did pass the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988 (1976). But this in no respect negates forthright statements in Hall and Mills to the effect that equity courts have inherent jurisdiction to fashion appropriate relief, including attorney's fees, in spite of the American rule. Federal courts, being of limited jurisdiction, have less inherent equitable powers than do state courts. Where, as here, we are unencumbered by state statute or federal statute, we retain all of the inherent equity powers that existed at common law, which included the right to assess attorney's fees against the losing party as is done in England today.[6]
As far back as Moss v. Winston, 223 Ala. 515, 137 So. 303 (1931), this Court held:
The general rule here applicable is stated in 17 Corpus Juris, 807, as follows: "Apart from the sums allowable and taxed as costs, there can, as a general rule, be no recovery as damages for the costs and expenses of litigation or expenditures for counsel fees. In cases of civil injury or breach of contract, in which there is no fraud, willful negligence, or malice, the courts have considered that an award of costs in the action is sufficient to cover the expenses of litigation and make no allowance for the time, indirect loss and annoyance."
223 Ala. at 517, 137 So. at 304-305.
The obvious conclusion to be reached from this quote is that Alabama recognizes exceptions to the American Rule where fraud, willful negligence or malice has been practiced. In the present case, there was evidence before the court from which it could conclude that the bank concealed the existence of its own written investment standards, violated its own written minimum standards of safety, attempted to conceal the holding of REIT's under the heading of insurance, and attempted to conceal the fact that it had sold Associated Coca-Cola stock at a loss in January 1975 by lumping the sale of this stock with the sale of 1,000 shares of a parent company Coca-Cola stock.
*1244 The above evidence would justify the award of the beneficiaries' attorneys' fees against the trustee. Furthermore, we said in Murphy v. Merchants National Bank of Mobile, 240 Ala. 688, 200 So. 894 (1941):
It has been recognized that costs necessarily incurred by the trustor or cestui que trust to compel a defaulting trustee to make a final settlement of his administration of the trust should be assessed against the trustee who wrongfully necessitated these expenditures on accounting. This result finds expression in 4 Bogert on Trusts, § 962; Pomeroy v. Noud, 145 Mich. 37, 108 N.W. 498; 24 C.J. p. 1057, § 2531; Perry on Trusts, 7th ed. vol. 1, § 903; April v. April, 245 App.Div. 841, 281 N.Y.S. 538, 540; In re Rosenfeldt's Will, 185 Minn. 425, 241 N.W. 573; Buder v. Franz, 8 Cir., 27 F.2d 101; Royal v. Royal, 30 Or. 448, 47 P. 828, 48 P. 695.
240 Ala. at 702, 200 So. 894.
American Jurisprudence has stated the general rule regarding the allowance of attorney's fees in trust matters:
The allowance of counsel fees and litigation expenses is within the discretion of the court. Generally, where an allowance is made, to whom it is made, and who pays it, depend upon factors such as who benefits from the litigation, the outcome of the litigation, and the necessity for the litigation. [Emphasis added.]
[Footnotes omitted.]
76 Am.Jur.2d Trusts § 656 (1975).
There being ample authority in the exception to the American rule to justify the shifting of litigation costs from the beneficiaries to their paid trustee, we are compelled to reverse the trial court's judgment which failed to do so.

Excessiveness of Fees
Having decided that Judge Price erred in not assessing the award of attorneys' fees in this case against the party who caused the loss, we now turn to the question of whether his award of attorneys' fees was excessive. At the outset, we must consider whether the bank had standing to question the fee allowance. Jordan v. Guaranty Pest Control, Inc., 292 Ala. 601, 298 So.2d 244 (Ala.1974). The beneficiaries' argument is that the award of attorneys' fees was a matter between the court and themselves and inasmuch as they have not appealed from the award and are perfectly satisfied with the amount of it, the bank has no standing to object on this appeal. Needless to say, this argument overlooks the crucial point that on the appeal the bank is now being asked by these same beneficiaries to pay an award of fees which, although the beneficiaries may not deem it excessive, the bank does deem to be excessive if it must pay those fees. We totally reject this argument as inconsistent with the due process provision of both our State and Federal Constitutions.
We likewise reject the beneficiaries' argument that because the bank has been a determined and vigorous adversaryrequiring three appeals to this Court, a petition for certiorari to the Supreme Court of the United States, an attempt to relitigate what has already been decided in this Court, as well as in the circuit court, and the litigation of twelve separate defenses in circuit courtthat somehow this justifies additional compensation. This claim does not fall within any of the rubrics set forth in Peebles, and, therefore, we reject it. In the ordinary case counsel will be well paid because of the additional time and energy expended in opposing such a vigorous adversary. Our adversary judicial system works best when lawyers of comparable intellectual ability, financial backing, and vigorous determination are pitted against each other.
As we have stated earlier, although counsel for the parties did not have the benefit of our decision in Peebles, a study of the record convinces us that most, if not all of *1245 the factors enumerated in Peebles, were considered.[7]
This case has caused us to extensively study complex litigation in other jurisdictions, as well as in Alabama, some of which used the factors in Peebles and some which did not, where the litigation brought about a recovery of over $1,000,000.00.
Some of the cases which we studied are attached as Appendix I to this opinion.[8] A study leads us to the conclusion that the fee assessed by Judge Price is not excessive under the factors outlined in Peebles, nor does it bring the bench and bar into disrepute, but it does represent the outer limit of what a reasonable fee should be in this case. For those reasons, we will not disturb it, and particularly are we constrained to not disturb it where counsels' clients have expressed agreement to it.
On the other hand, we are asked to assess, and accept the responsibility of assessing, a reasonable attorneys' fee against the paid trustee who defaulted under its obligation under the trust. The cases that we have considered have taught us that generally, even with the fine tuning of assessing the factors in Peebles, courts in complex six-figure and seven-figure judgments have assessed fees from 20% to 25% of the recovery. This has generally worked out to be the rule in our own State, as evidenced by the Appendix, but this is not to say that there have not been courts that have assessed one-third, or even higher fees which we, after reading the decisions, also conclude were reasonable. In assessing the fee against the defaulting bank, as opposed to the fund, one factor that we have considered has been the quality of the actions of the bank. Although the bank's actions are considerably below the standards required of a paid fiduciary, yet they fall far short of actions which would justify a fee award of 33 1/3% of the recovery, or even 20% to 25% of the recovery, which is more in line with most of the stockholders, securities, and civil rights cases that we have reviewed.
The bank itself has suggested in oral argument that if a reasonable fee were due, a reasonable amount should be $500,000.00 to $750,000.00 to $1,000,000.00. It is our opinion that a reasonable fee should be paid by the bank to the beneficiaries in this case as and for a portion of their attorneys' fees in the sum of $1,000,000.00.
The fee of the guardian ad litem of $7,200.00, based on the 72 hours at $100.00 per hour is not excessive and will be affirmed.

Statute of Limitations Claim
We have reviewed the bank's argument concerning the statute of limitations as applied to those accounts that ceased more than one year before this litigation commenced, and we are of the opinion that the same was decided in Martin II, albeit perhaps not with the precision desired by counsel for the bank, and, therefore, that matter is res judicata and not a proper subject of this appeal.
For the reasons heretofore stated in this opinion, the order of this court is that the judgment of the trial court as to attorneys' fees in the amount of $1,795,200.00, against the fund is hereby affirmed. The judgment of the trial court is reversed insofar as it failed to shift all or part of the litigation costs against the trustee bank and a judgment against the bank is hereby rendered in the amount of $1,000,000.00. The trial court is directed to enter an appropriate order.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
*1246 JONES, SHORES, EMBRY and BEATTY, JJ., concur.
TORBERT, C.J., and MADDOX, J., dissent.
FAULKNER and ALMON, JJ., recused.

 APPENDIX I
 Fee Awards in Various Jurisdictions
 Fees Awarded as
Case Recovery Fees Awarded Percentage of Recovery
Philadelphia Electric Co. v. $22,175,000 $5.5 million 25% of recovery, except
Anaconda American Brass Co., 15% of $1 million
47 F.R.D. 557 (E.D.Pa.1969) recovered by City of
 New York
Illinois v. Harper & Row $3,213,287-1972 $475,000 14.4%-1972
Publishers, Inc., 55 F.R.D. 221 pre 1972 pre 1972 16.2%-pre 1972
(N.D.Ill.1972) $3,461,628 $662,000
Cannon v. Texas Gulf Sulphur, $2.7 million $585,000 21.7%
1973 Sec.L.Rep. (CCH) ¶ 94,110 plus interest
(S.D.N.Y.1973) of $100,000
Colson v. Hilton Hotels Corp., $5,176,386 $950,000 18.5%
1972 Trade Cas. (CCH) ¶ 74,785
[59 F.R.D. 324] (N.D.Ill.1972)
Powell ex rel. Gulf Life Holding $1,300,000 $262,000 20%
Company v. Fitts
CA 3-4004-A
(N.D.Tex.1971)
Fischer v. Wolfinbarger, 5911 $1,100,000 $350,000 31.8%
(W.D.Ky.1972) (approx)
Mintz v. Birmingham Trust $2,179,135 $435,827 20%
National Bank, CA 71-731 (N.D.
Ala. 1973)
Mintz v. First National Bank, $625,676 $130,535 20%
CA 71-732 (N.D.Ala.1973)
The Cast Iron Pipe Cases, CA $1,700,000 $327,079.16 20%
71-516 (N.D.Ala.1973)
Partain v. First National Bank $400,000 $100,000 25%
of Montgomery, CA 3419-N, 59
F.R.D. 56 (N.D.Ala.1973)
Griffin v. First National Bank $752,592 $185,425.55 24.63%
of Mobile, CA 6800-71-P (M.D.
Ala. 1973)
Steelroath v. American National $33,000 $81,306.72 24.6%
Bank & Trust Company, CA (approx)
6799-71-P (M.D.Ala.1973)
Detroit v. Grinell Corp., 1973-1 $10 million $1,500,000 15%
Trade Cas. (CCH) ¶ 74-341 (S.D.
N.Y.1972)

*1247
The New Jersey Gasoline Cases $29,875,000 $6,111,000 30% of one class =
(D.N.J.1973) $1,760,000
 25% of another class =
 $918,000
 $3,433,000 from third
 class
Epstein v. Weiss, 1970-'71 Sec.L. $1 million $300,000 30%
Rep. (CCH) ¶ 92,938, 50 F.R.D.
387 (E.D.La.1970)
Rosenfeld v. Black, 1972-'73 Sec. $1 million $250,000 25%
L.Rep. (CCH) ¶ 93,635 (S.D.N.Y.
1972)
Stull v. Kaymarq Consolidated $440,000 $142,000 32.3%
Corp., 1969-'70 Sec.L.Rep. (CCH)
¶ 92-508 (S.D.N.Y. 1969)
 Percentages are Larger
 on Smaller Recoveries
Name of Case Citation Recovery % Fee Allowance
Blau v. Mission Corp. 64 Civ. 54 $70,000 49%
Levinson v. Charney 62 Civ. 800 $18,000 48%
 (SDNY)
Adler v. Klawans 57 Civ. 391 $23,000 50%
 (SDNY)
Blau v. Green Civ. No. 148-76 $45,000 40%
 (SDNY)

TORBERT, Chief Justice (dissenting).
I respectfully dissent from that part of the opinion which directs the defendant bank to pay a substantial portion of the plaintiffs' attorney's fees. This decision is the assault on the traditional American rule that the majority recognizes has heretofore never been pursued by the courts of this nation.
Initially, I will address the contention that in Moss v. Winston, 223 Ala. 515, 137 So. 303 (1931), Alabama recognized an exception to the American rule when fraud, willful negligence, or malice has been practiced. In Moss, the Court cited Corpus Juris for the proposition that attorney's fees could be shifted where there was "fraud, willful negligence or malice." However, Moss was only concerned with whether the pleadings were subject to demurrer. In the plaintiff's complaint there was a request for attorney's fees. The Court said that because these were special damages the demurrer was sustained because of the failure to plead fraud, willful negligence, or malice in the complaint. I have found no case since Moss where the Moss rule has been applied. The Fifth Circuit Court of Appeals in Burgess v. Williamson, 506 F.2d 870 (5th Cir.1975), mentioned Moss and refused to apply the Moss rule, because that court also found no case where attorney's fees were actually awarded under the Moss rule. Furthermore, the quotation from Corpus Juris in Moss is from a section on damages generally, which recognizes the American rule except for this exception. It does not purport to be an exception limited to equitable cases, as Corpus Juris says it applies in actions for "civil injury" and "breach of contract." If this is the rule in Alabama, it simply has heretofore never been applied. This Court has not approved the award of attorneys *1248 fees to successful plaintiffs in fraud or willful negligence cases.
A reading of the cases cited in support of the statement in Corpus Juris reveals that the fraud, willful negligence and malice language is really a reference to whether punitive damages were authorized. The courts would generally remark that plaintiff was only entitled to compensatory damages absent facts supporting an award of exemplary or punitive damages. The rationale of these cases seems to be that while attorney's fees are not recognized as part of compensatory damages, a jury might take into account plaintiff's attorney's fees when awarding punitive damages otherwise properly assessable as part of the basis for establishing the amount of punitive damages. Therefore, I find Moss not to be precedent for the action taken by this Court in this case.
If Alabama has not recognized the supposed fraud, willful negligence, or malice exception to the American rule, the only other arguable basis for requiring the fee shifting is under the limited exception that exists in equity cases. I recognize that a court sitting in equity has broad powers to do justice in an individual case. First Alabama Bank of Montgomery v. Martin, 425 So.2d 415 (Ala.1982) (Martin II); Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). As Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), points out, two exceptions exist which allow the award of attorney's fees in equity cases. One is where the suit confers a substantial benefit on the members of an ascertainable class by creating a common fund and the attorney's fee is paid from the fund. This is the treatment given the issue of attorney's fees by the trial court in this case. The other is where a party has acted vexatiously, wantonly, or for oppressive reasons, with the fee shifting being punitive in nature. The majority opinion takes this case from the first exception and places it in the second.[1]
The authorities cited by the United States Supreme Court in Hall, supra, illustrate the type of equity cases in which attorney's fees are assessed against an opposing party. The complete statement from Moore's Federal Practice, cited in Hall, is as follows:
"The equitable power is not confined to the fund cases. It is sufficiently broad that a federal district court may award attorney's fees in favor of one party and against another, where an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons. But only in exceptional cases and for dominating reasons of justice can the exercise of the power by the district court be justified."
6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.77[2] (2d ed. 1983). The cases cited by the Supreme Court in Hall readily fall within this rule and can truly be described as exceptional.
In Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), plaintiffs sued to enjoin racial discrimination at eating establishments, and the Supreme Court found "respondents interposed defenses so patently frivolous that a denial of counsel fees to petitioners would be manifestly inequitable." Id. at 402, n. 4, 88 S.Ct. at 966.
In Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), the Court wrote: "[R]espondents were callous in their attitude, making no investigation of libellant's claim and by their silence neither *1249 admitting nor denying it. As a result of that recalcitrance, libellant was forced to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old." Id. at 528, 82 S.Ct. at 998.
In Bell v. School Board of Powhatan County, Virginia, 321 F.2d 494 (4th Cir. 1963), in which plaintiffs sought to desegregate a public school system the court said:
"Here we must take into account the long continued pattern of evasion and obstruction which included not only the defendants' unyielding refusal to take any initiative, thus casting a heavy burden on the children and their parents, but their interposing a variety of administrative obstacles to thwart the valid wishes of the plaintiffs for a desegregated education. To put it plainly, such tactics would in any other context be instantly recognized as discreditable. The equitable remedy would be far from complete, and justice would not be attained, if reasonable counsel fees were not awarded in a case so extreme."
Id. at 500.
In Rolax v. Atlantic Coast Line R. Co., 186 F.2d 473 (4th Cir.1951), plaintiff union members sued the union. The court in that case said:
"The justification here is that plaintiffs of small means have been subjected to discriminatory and oppressive conduct by a powerful labor organization which was required, as bargaining agent, to protect their interests. The vindication of their rights necessarily involves greater expense in the employment of counsel to institute and carry on extended and important litigation than the amount involved to the individual plaintiffs would justify their paying. In such situation, we think that the allowance of counsel fees in a reasonable amount as a part of the recoverable costs of the case is a matter resting in the sound discretion of the trial judge."
Id. at 481.
"In suits to enforce the rights of trust beneficiaries the court exercises discretion as to the allowance of counsel fees and costs out of the trust property or from other sources." G. Bogert, The Law of Trusts and Trustees, § 871 (2d ed. 1982). The trial court, exercising its discretion, apparently determined that the bank's conduct did not rise to the level of conduct described above and, therefore, that the award should not be made against the bank. The majority must have concluded that the court abused its discretion. I find no basis for reaching such a conclusion.
As the author of Martin II, I must point out that the opinion did not contain a finding that the bank acted in bad faith. Our affirmance was based in large part on the deference accorded the trial court's decision under the ore tenus doctrine and upon our conclusion that the evidence supported the finding that the bank was imprudent in its investment decisions. The opinion implicitly reaches the issue of bad faith, when it discusses the issue of whether the plaintiffs were entitled to compound interest on the judgment. Compound interest is a remedy available where the trustee is guilty of evil or corrupt intent, but that is not the only situation which will support such an award, and the opinion goes on and points out that the award of compound interest can be sustained in another situation that existed in this case. Martin II, 425 So.2d at 428, 429. If the bank had acted in bad faith, there would have been no reason to find another theory to support the award.
We have upheld the trial court's award of attorney's fees out of the "common fund" rather than against the trustee where the trustee was found to have a conflict of interest and arguably was involved in self-dealing. Birmingham Trust National Bank v. Henley, 371 So.2d 883 (Ala.1979). In Henley one trustee was a bank. The trust assets were primarily stock in the bank. The bank sought to reorganize and in the process merge with a newly formed bank. As a result, the trust assets were to be sold. The bank was required to disclose information to an appraiser so that a price for the stock could *1250 be determined. The bank failed to make a complete disclosure, and as a result the trust assets were undervalued. The bank was also the buyer of the trust assets. As buyer of the trust assets, it would have liked a low valuation. As trustee, it should have sought a high valuation. Clearly the bank had a conflict of interest. The failure to disclose information affecting valuation was a breach of the trustee's fiduciary duty. The trial court awarded plaintiff's attorney fees out of a common fund. On appeal this Court affirmed that award. I do not think the finding of imprudent investment by the trustee in this case, in light of the result in Henley, supports a decision to have the trustee bank pay plaintiffs' attorney's fees. Therefore, I would affirm the trial court's award of attorney's fees payable out of the common fund.
Finally, if the majority of this Court believes that under the facts of this case the defendant should be compelled to pay the plaintiffs' attorney's fee, they should recognize that they are making new law rather than applying current law.
MADDOX, J., concurs.
NOTES
[1] First Alabama Bank of Montgomery, N.A. v. Martin, et al., 381 So.2d 32 (Ala.1980) ("Martin I'), 425 So.2d 415 (Ala.1983) ("Martin II"). Martin I was an attempt by First Alabama to require the trial judge to certify the class in this case under Rule 23(b)(3), A.R.Civ.P., instead of Rule 23(b)(1) and (2). Martin II was an attempt by First Alabama to reverse the judgment of the trial court entered after a trial on the merits before an advisory jury ordering that the bank pay $1,226,798.00 into the bond fund and $1,426,254.00 into the equity fundthe difference between the purchase and sales prices of specified bond and equity securities. The order further directed the bank to "recalculate and restate each quarterly valuation of principal [in the bond and equity funds] as if such securities [held to have been imprudently acquired or sold] had neither been purchased nor sold," and to distribute promptly to "the owners of participating units, including those participating units previously withdrawn, any principal amounts due on the basis of such restated quarterly statements." This Court, in Martin II, affirmed this judgment of the trial court.
[2] Speiser, Attorney's Fees, § 12:7 (1973).
[3] McLaughlin, The Recovery of Attorney's Fees: A New Method of Financing Legal Services, 40 Fordham L.Rev. 761, 782 (1972).
[4] See Goodhart, Costs, 38 Yale L.J. 849 (1929).
[5] The Supreme Court's footnote 45 in Alyeska Pipeline Service v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). See, e.g., McLaughlin, The Recovery of Attorney's Fees: A New Method of Financing Legal Services, 40 Fordham L.Rev. 761 (1972); Ehrenzweig, Reimbursement of Counsel Fees and the Great Society, 54 Calif.L.Rev. 792 (1966); Stoebuck, Counsel Fees Included in Costs: A Logical Development, 38 U.Colo.L.Rev. 202 (1966); Kuenzel, The Attorney's Fee: Why Not a Cost of Litigation?, 49 Iowa L.Rev. 75 (1963); McCormick, Counsel Fees and Other Expenses of Litigation as an Element of Damages, 15 Minn.L.Rev. 619 (1931); Comment, Court Awarded Attorney's Fees and Equal Access to the Courts, 122 U.Pa.L. Rev. 636, 648-655 (1974); Note, Attorney's Fees: Where Shall the Ultimate Burden Lie?, 20 Vand. L.Rev. 1216 (1967). See also 1 Speiser § 12.8; Posner, An Economic Approach to Legal Procedure and Judicial Administration, 2 J. Legal Studies 399, 437-438 (1973).
[6] We have always awarded attorney's fees in divorce and malicious prosecution cases without the benefit of statute.
[7] See, also Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), reaching a similar result as Peebles on the results factor.
[8] See Hornstein, The Counsel Fee in Stockholder's Derivative Suits, 39 Colum.L.Rev. 784 (1939); Kaufman, Counsel Fees in Stockholder's Suits and Securities Class Actions, Resource Materials for Security Litigation, (3d ed. 1979), published by the American Law Institute-American Bar Association Committee on Continued Legal Education.
[1] It should also be recognized that while Hall sets out the "bad faith" exceptions which justify an award of attorney fees against an opponent in equity cases, the Court held that the award in Hall was justified under the authority of Mills v. Electric Auto Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Mills involved a situation where the plaintiff's action conferred a substantial benefit on the members of a class. Admittedly, it was also a situation where no fund actually came into existence as a result of the suit and the award was made against the corporate defendant on the theory that the cost of litigation would then be spread among the plaintiff shareholders who benefited from the suit. See also, Shimman v. International Union of Operating Engineers, Local 18, 744 F.2d 1226 (6th Cir.1984), for an excellent discussion of Hall and the "bad faith" exception.